IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Angela Palomino, ) | |
| ) | Civil Action No. 6:14-cv-01363-HMH-JDA |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Concord Hospitality Enterprises Company, ) | |
| Choice Hotels International Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 19.] Plaintiff brings this case pursuant to the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"). Pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(A) and Local Civil Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

Plaintiff filed this action on April 14, 2014. [Doc. 1.] On November 14, 2014, Defendants filed a motion for summary judgment. [Doc. 19.] Plaintiff filed a response in opposition on December 9, 2014 [Doc. 22], and Defendants filed a reply on December 18, 2014 [Doc. 24]. Accordingly, the motion for summary judgment is ripe for review.

## **BACKGROUND**

Plaintiff began working for Defendant Concord Hospitality Enterprises Company ("Concord") in November 2003, when Concord became the management company of the MainStay Suites hotel located at 2671 Dry Pocket Road in Greer, South Carolina (the

"Hotel").[1] [Docs. 19-5 at 4:7–6:24; 19-4 ¶¶ 4–6.] Plaintiff had previously worked at the Hotel under its prior management company and continued in her role as General Manager after Concord became the management company. [Doc. 19-5 at 3:1–6:24, 83–84.] As the General Manager of the Hotel, Plaintiff supervised all staff at the Hotel, which consisted of eleven to fourteen employees, including a sales manager, a front desk supervisor, front desk clerks, housekeepers, a maintenance person, and a breakfast attendant and van driver. [*Id.* at 13:8–14:9; Doc. 19-4 ¶ 6.] In 2011 and 2012, Plaintiff reported to Michael Roberts ("Roberts"), a Regional Manager for Concord; Roberts reported to Ken Polo ("Polo"), a Senior Vice President of Operations for Concord. [Docs. 19-5 at 8:1–9:10; 19-4 ¶¶ 3, 6.]

Throughout her tenure as General Manager of the Hotel, the Hotel consistently met and exceeded operational goals. [Doc. 22-1 ¶ 2.] Choice recognized the Hotel as an exceptional performer with five annual gold star awards and also recognized the Hotel as the Inn of the Year—given to only one of Choice's MainStay Suites hotels each year. [*Id.*] Additionally, the Hotel was the highest rated, through customer satisfaction surveys, MainStay Suites managed by Concord. [*Id.* ¶ 3.]

---

[1] Defendant Choice Hotels International Inc. ("Choice") is the registered owner of various hotel brands, including MainStay Suites. [Doc. 19-3 ¶ 4.] Choice serves as a franchisor and contracts with franchisees to allow the franchisees to operate hotels utilizing one of Choice's brands. [*Id.*] Dry Pocket Road Hotel Development, LLC ("Dry Pocket"), a wholly owned subsidiary of Choice, was a franchisee and owned the Hotel. [*Id.* ¶ 8.] Dry Pocket hired Concord to operate the Hotel. [*Id.*]

In mid-2011, Plaintiff informed Roberts and others at Concord that she had been diagnosed with multiple sclerosis ("MS").[2] [Doc. 22-9 at 6:3–7:21, 116.] However, her MS never limited Plaintiff at her job, and Plaintiff never requested any accommodations for MS. [Doc. 19-5 at 44:16–18, 45:1–4, 64:20–25.]

On October 27, 2011, Reggie Williams ("Williams"), the Hotel's Front Desk Supervisor, emailed Lila Hedlund ("Hedlund"), Concord's Senior Director of Compliance and Training, to complain about Plaintiff and what Williams perceived as an "extremely hostile" work setting. [Doc. 19-7 at 6.] Williams complained of "continuous degradation," "constant[] belittling," "backbiting," "name calling," and "devaluing . . . work skills." [*Id.* at 6.] Williams also complained about daily memoranda written in all capital letters and containing "constant threats of termination to employees who are 'not bright enough.'" [*Id.*] Hedlund asked Williams to send her documents and memoranda so that Concord could proceed with an investigation [*id.* at 7], and Williams sent examples of memoranda and hand-written notes and a written complaint from Hotel employee Charlene Scott ("Scott") [*id.* at 8–21]. Scott complained of "unfair treatment to the majority of employees," "backlash for small errors," memoranda telling employees how "incompetent" they were and how "stupid" their mistakes were, and belittling staff members in front of guests. [*Id.* at 20–21.] Hedlund shared the complaints of Williams and Scott with Roberts [*id.* ¶ 12], who reviewed the documentation and spoke with Williams and Scott about their complaints [Doc. 19-4 ¶

---

[2]The parties dispute whether Plaintiff was actually diagnosed with MS. [*See* Docs. 19-1 at 14–16; 22 at 3.] However, because, as discussed below, the Court assumes without deciding that Plaintiff has established a prima facie case of disability discrimination, the Court declines to include in this Background section any facts related to the dispute regarding Plaintiff's diagnosis.

3

9]. On November 9, 2011, Roberts issued a written disciplinary warning to Plaintiff, which provided as follows:

> [Plaintiff] has had on a[t] least one occasion a conversation with a customer about an associate's behavior as well as posting several memos which have been viewed by at least one staff member as threatening in nature. [Plaintiff] has been using strong language on at least one incident which is being viewed by at least one staff member as maintaining a hostile work environment. Several posted memos as well as written correspondences have shown a pattern of a very strong delivery of discipline to at least one staff member in a public message. [Plaintiff] as well has posted memos stating "corporate" as well as other senior members of the Concord leadership, who have not had the opportunity to review before publicly posting the compan[y']s position on a given topic. See attached supporting documents.

[Doc. 19-5 at 103.] The warning further stated,

> [Plaintiff] will receive a written warning on her behavior of talking to a customer on the staff's work performance as well as having a pattern of very aggressive language in written and memo correspondences to the staff members. She will be counseled and monitored by the regional related to the content of her future memos to the hotel staff checking for hostile or threatening message being delivered. [Plaintiff] will also be instructed by her regional director, Michael Roberts, to not give out access to her email to staff members. [Plaintiff] will be coached and coun[s]eled that any retaliation directed to any of the staff members directly or indirectly spoken on the topics being covered today will result in future disciplinary actions ranging from another written warning, which could result in termination. There can be zero retaliation in relation to these topics discussed today with Michael Roberts. [Plaintiff] will be expected to continue to maintain the standards that Concord Hospitality has set in place and charged to [Plaintiff] to uphold. She should continue to hold her staff accountable for their work requirements under their job description co[a]ching and counselling them having a process of continued improvement in place.

[*Id.*] Finally, the written warning provided, "[Plaintiff] will receive continued written warning documentation on the next offense related to message delivery in a hostile manner, threat[en]ing comments and strong language within her message. Further documentation could result in termination." [*Id.*] Plaintiff and Roberts met in person to go over the warning, and both signed the warning. [Docs. 19-4 ¶ 10; 19-5 at 103–04.] Subsequently, Plaintiff submitted a written response to the warning [Doc. 19-5 at 105]; however, Roberts did not reverse the written warning [Doc. 19-4 ¶ 11].

In March 2012, the Senior Director of Revenue Management at Concord reported to Roberts that Plaintiff had used an inappropriate and unprofessional tone on a conference call. [*Id.* ¶ 12.] Roberts issued an oral warning to Plaintiff regarding her tone and the need to remain professional in her interactions. [*Id.*]

In May 2012, Roberts received oral and written complaints from two Hotel employees—Anna Hodges ("Hodges"), the Hotel Sales Manager, and Amanda Eggleston ("Eggleston"), a front desk and payroll employee. [*Id.* ¶ 13.] Hodges complained that she was not being allowed to do her job and provided the following examples: Plaintiff told clients Hodges was not in when she was in; calls were not passed to Hodges because front desk associates were instructed not to transfer the calls; front desk associates were given incentives for not transferring calls to Hodges; Plaintiff changed and deleted items Hodges entered into weekly sales reports; and Plaintiff threatened Hodges and others with terminations and created a hostile work environment. [*Id.* at 9.] Hodges stated that she had attempted to address these issues with Plaintiff, who always blew her off, and Hodges was informing Roberts because the situation had gotten worse and was no longer hindering just Hodges but the entire team at the Hotel. [*Id.* at 9–10.] Eggleston complained that the

5

work environment was hostile and uncomfortable and Plaintiff was unprofessional and lacked leadership skills. [*Id.* at 11.] Both Hodges and Eggleston informed Roberts that other Hotel staff had quit because of Plaintiff and others were looking elsewhere for employment. [*Id.* at 9–11.] On May 20, 2012, Roberts emailed Hedlund and copied Polo and Debra Punke ("Punke"), Vice President of Human Resources, notifying them of the complaints and stating that Roberts believed he should issue a second written warning, which would result in termination.[3] [*Id.* at 12.] On May 30, 2012, Roberts issued a second written disciplinary warning to Plaintiff, detailing the complaints of Hodges and Eggleston. [*Id.* at 14–15.] The warned further stated,

> [Plaintiff] was coached and coun[s]eled on November 11, 2012 that any continued hostile environment allowed or generated by [Plaintiff] could result in future disciplinary actions ranging from another written warning, which would result in termination. [Plaintiff] will receive a . . . written warni[n]g for allowing a hostile work envir[]ronment to exist coupled with the gossiping conducted by [Plaintiff] in more than one occasion and viewed by more than one associate as the victim and finally threatening publicly to "Get Rid" of ce[r]tain individuals on the team. [Plaintiff] as well has become a barrier in allowing the sales manager to conduct her job as directed by the regional sales manager by deliberately intercepting and redirecting clients from the sales manager. This is [Plaintiff's] second written warning in a twelve month period of time and she is being terminated.

---

[3]Hedlund, Polo, and Punke supported Roberts's decision to terminate Plaintiff. [Docs. 19-4 ¶ 16; 19-7 ¶ 15; *see also* Docs. 19-6 ¶ 14 (Punke's affidavit, stating that Plaintiff's termination was consistent with company policy that says managers will be terminated if they get two written warnings within a twelve-month period); 19-5 at 89 (Concord Handbook Policies, providing that "[m]anagers may be terminated after receiving only two written warnings within a twelve-month period from the date of the first written warning").]

[*Id.* at 15.] Plaintiff and Roberts met in person to go over the warning and termination notice. [*Id.* ¶ 17.] Plaintiff did not sign the second warning and did not submit a response or appeal the termination. [*Id.* at 15; Doc. 19-5 at 39:4–15.]

Plaintiff submitted an intake questionnaire to the Equal Employment Opportunity Commission ("EEOC"). [Doc. 19-5 at 109–12.] On July 20, 2012, Plaintiff signed a charge of discrimination ("Charge"). [*Id.* at 113.] The Charge alleged that Plaintiff had been discriminated against based on her age and disability. [*Id.*] On November 9, 2012, the EEOC issued a Dismissal and Notice of Rights. [*Id.* at 117.] Subsequently, the EEOC reopened the file and issued a Notice of Intent to Reconsider. [*Id.* at 118.] On January 28, 2014, the EEOC issued a second Dismissal and Notice of Rights. [*Id.* at 119.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendants argue Plaintiff cannot establish a prima facie case under the ADA or ADEA nor can Plaintiff establish that Defendants' legitimate, nondiscriminatory reason for terminating Plaintiff is really a pretext for unlawful discrimination.  [Doc. 19.]  The Court agrees and, although the Court would typically discuss the ADA and ADEA claims separately, because the claims suffer from the same deficiencies with respect to establishing pretext, the Court addresses the claims together.

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).

Absent direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor motivated an employer's adverse employment action,[4] a plaintiff may proceed under the *McDonnell Douglas* "pretext" framework to

---

[4]The briefing by the parties addresses only the *McDonnell Douglas* framework; Plaintiff does not argue she has direct or circumstantial evidence of discrimination.

9

establish a claim of employment discrimination. *Diamond v. Colonial Life & Acc. Ins. Co.*, 417 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2003)); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995) (holding that "the *McDonnell Douglas* scheme of proof applies to appropriate claims under the ADA). Under this framework, an employee must first prove a prima facie case of discrimination.[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). If the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the articulated reason was actually a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804.

---

[5]To establish a prima facie case of discriminatory discharge under the ADA, a plaintiff must demonstrate (1) he was a qualified individual who had a disability; (2) he was terminated; (3) he was fulfilling his employer's legitimate expectations when he was terminated; and (4) the discharge gives rise to a "reasonable inference of unlawful discrimination." *Reynolds Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012). To establish a prima facie case of discriminatory discharge under the ADEA, a plaintiff must demonstrate (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Hill*, 354 F.3d 277 (citing *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999)).

Here, even assuming without deciding Plaintiff can establish a prima facie case of disability or age discrimination,[6] the Court agrees Defendants have articulated a legitimate,

---

[6]The Court is not convinced Plaintiff has established a prima facie case of either disability or age discrimination because the Court is not convinced Plaintiff has shown she was fulfilling Concord's legitimate expectations at the time she was terminated where four Hotel staff members submitted written complaints about Plaintiff between October 2011 and May 2012, leading to two written disciplinary warnings; Concord's Senior Director of Revenue Management reported that Plaintiff had used an inappropriate and unprofessional tone on a conference call, leading to an oral warning; and Concord's policy provides that managers may be terminated for receiving two written warnings with a twelve-month period. Additionally, the Court is not convinced Plaintiff has established her discharge gives rise to a reasonable inference of unlawful discrimination under the ADA or that Plaintiff was a qualified individual who had a disability. Finally, Plaintiff conceded at her deposition that her age discrimination claim is actually tied to her disability discrimination claim. [Doc. 19-5 at 61:22–62:2 ("Q: . . . But my question to you is do you or do you not believe that the Concord Enterprise Group and Choice Hotels discriminated against you based on age? A: Based on age because I have MS, not based on age if I didn't have MS.").]

However, as one court within the Fourth Circuit has noted, "[t]he relevance of the *McDonnell Douglas* scheme outside of the trial context is limited." *Lerner v. Shinseki*, No. ELH-10-1109, 2011 WL 2414967, at *14 (D. Md. June 10, 2011). The Fourth Circuit Court of Appeals has observed,

> Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of "the ultimate question of discrimination vel non." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983). As the Supreme Court has explained, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000). Thus, "[c]ourts must . . . resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination vel non.'" *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) (citation omitted).

*Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294–95 (4th Cir. 2010). Further, the Supreme Court has stated,

> Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima

nondiscriminatory reason for terminating Plaintiff, and Plaintiff has failed to establish a genuine issue of material fact remains as to whether the articulated reason is pretext for unlawful discrimination.  Defendants argue Plaintiff was terminated consistent with Concord's policy because she received two written warnings and an oral warning within a twelve-month period. [Doc. 19-1 at 27.] On November 9, 2011, Plaintiff received a written disciplinary warning related to delivering messages to employees in a hostile manner and using threatening comments and strong language.  [Doc. 19-5 at 103.]  That warning provided that further documentation could result in termination.  [*Id.*]  In March 2012, Plaintiff received an oral warning regarding her tone on a conference call. [Doc. 19-4 ¶ 12.] On May 30, 2012, Plaintiff received a second written disciplinary warning for a continued hostile environment, gossiping, threatening in public to terminate Hotel staff, and preventing the sales manager from doing her job. [*Id.* at 14–15.] As a result of this second disciplinary warning in a twelve-month period, Plaintiff was terminated.  [*Id.*; *see also* Doc. 19-5 at 89 (Concord Handbook Policies, providing that "[m]anagers may be terminated after receiving only two written warnings within a twelve-month period from the date of the first written

---

        facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*Aikens*, 460 U.S. at 715 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, (1981)); *see Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) ( "The Aikens principle applies, moreover, to summary judgment as well as trial proceedings."). In light of this guidance from the Supreme Court and the Fourth Circuit Court of Appeals, the Court agrees with the District of Maryland that where the employer has met its burden of articulating a legitimate, nondiscriminatory reason for its adverse action against the plaintiff, the Court may assume, without deciding, that the plaintiff has established a prima facie case of discrimination.  *See Lerner,* 2011 WL 2414967, at *14.

warning").] The Court concludes Defendants have met their burden under *McDonnell Douglas* to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff. Accordingly, the Court will consider whether Plaintiff has met her burden of demonstrating that Defendants' proffered reason is merely a pretext for discrimination, which would indicate whether Plaintiff could meet her ultimate burden of persuasion and demonstrate discrimination vel non. *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) ("The final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff." (alteration in *Merritt*) (quoting *Burdine*, 450 U.S. at 256)).

To prove an employer's articulated reason is a pretext for discrimination, a plaintiff "must prove '*both* that the reason was false, *and* that discrimination was the real reason' for the challenged conduct." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). When determining whether an articulated reason is pretextual, "[i]t is the perception of the decision maker which is relevant." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 445 (4th Cir. 1998), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). Upon review of the record, the Court determines Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendants' proffered reason for terminating Plaintiff is merely a pretext for discrimination.

In her response in opposition to the motion for summary judgment, Plaintiff focuses her argument on establishing a prima facie case of discrimination but fails to argue that

13

Defendants' proffered reason for terminating Plaintiff is merely a pretext for discrimination.[7] To the extent Plaintiff's response can be construed to argue the warnings she received were pretext because they were not legitimate warnings,"[i]t is the perception of the decision maker which is relevant." *Tinsley*, 155 F.3d 445.  The Fourth Circuit Court of Appeals has addressed the analogous situation where a plaintiff disagrees with the facts underlying a decision maker's assessment of the employee. *Hawkins v. Pepsico, Inc.*, 203 F.3d 274 (4th Cir. 2000).  In *Hawkins*, the employer argued it terminated the plaintiff because she performed poorly in her special projects capacity and failed to improve even after receiving negative feedback.  *Id.* at 279.  The plaintiff claimed the employer's criticisms were inaccurate and insisted she performed her job well.  *Id.*  The court held the plaintiff could not show the employer's stated reasons for terminating her were not the real reasons for her discharge, noting "'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for plaintiff's termination.'"  *Id.* (citing *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted in *Hawkins*)); *see also DeJarnette*, 133 F.3d at 280 ("But instead of producing evidence that shows [the supervisor's] assessment of her performance was dishonest or not the real reason for her termination—as the law requires—[the plaintiff] disputes the merits of [the] evaluations.").  Here, Plaintiff has failed to put forth any evidence, other than her own conclusory allegations, that Roberts did not believe the

---

[7]Indeed, Plaintiff's response in opposition references "pretext" only to argue that the appropriate stage to determine whether Plaintiff's warnings were legitimate would be at the pretext stage of the analysis. [Doc. 22 at 13–14.]  However, Plaintiff fails to make any argument that Defendants' proffered reason is a pretext for unlawful discrimination, much less to establish both that Defendants' proffered reason was false and that discrimination was the real reason Plaintiff was terminated.

employee complaints about Plaintiff's hostility and behavior toward her staff warranted a written disciplinary warning.[8]

To the extent the discussion of Lisa Bass ("Bass"), an alleged comparable employee whom Plaintiff argues was treated differently from Plaintiff,[9] in Plaintiff's response can be construed as a pretext argument, such argument fails to establish Defendants' proffered reason for terminating Plaintiff is a pretext for unlawful discrimination. Plaintiff concedes that Bass was terminated following two written warnings within a twelve-month period after a guest complaint about Bass and an employee's complaint about Bass to the IRS; however, Plaintiff argues Roberts tolerated Bass's conduct and allowed it continue for over two years despite repeated employee complaints. [Doc. 22 at 7–8.] The record in this

---

[8]Although Plaintiff now alleges that the warnings themselves were discriminatory [Doc. 22 at 13], Plaintiff testified at her deposition that her termination was the only action during her employment that was discriminatory [Doc. 19-5 at 64:3–7], and Plaintiff failed to allege that the warnings were discriminatory adverse employment actions in her Complaint [*see* Doc. 1 ¶¶ 22, 24 (alleging "Defendants' termination of Plaintiff's employment was unlawful discrimination in violation of" the ADA and ADEA)]. Additionally, Plaintiff's contention that her management style did not change [Doc. 22 at 3] fails to establish pretext because even if her management style remained the same and she was not disciplined for that management style earlier in her tenure with Concord, Plaintiff has failed to allege that any Hotel staff had submitted formal written complaints about her before October 2011.

[9]Bass was the General Manager of a MainStay Suites managed by Concord in Brentwood, Tennessee. [Doc. 22-5 ¶ 3.] The discussion regarding Bass is found in the fact section of Plaintiff's response in opposition to the motion for summary judgment [Doc. 22 at 7–8], but contains no legal argument. Plaintiff's discussion of Bass is based primarily on the declaration of Katherine J. Drafts ("Drafts"), a front desk clerk in the Brentwood MainStay Suites. [*Id.*; Doc. 22-5.] Defendants challenge Drafts's declaration as full of speculation and hearsay and incapable of creating a genuine issue of material fact. [Doc. 24 at 11 (citing *Greensboro Pro. Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995))]. However, the Court need not reach a determination regarding the admissibility of Drafts's declaration because, as discussed, even if admissible, the declaration does not establish that Bass was treated differently from Plaintiff.

case establishes that Concord had also received complaints about Plaintiff well before her November 2011 written warning and May 2012 termination; however, Plaintiff was issued a first written warning in November 2011 because that was the first time anyone had submitted a written complaint about Plaintiff that rose to an actionable level. [Docs. 24-1 ¶ 17; 24-2 ¶ 14; 19-7 at 6 (electronic mail message from Williams to Hedlund, stating that Williams had brought this to the attention of Mike Tonimaker two years before at a leadership development class), 7 (response email from Hedlund to Williams, indicating Williams had orally complained about Plaintiff before but that Hedlund had not proceeded with an investigation because Williams failed to follow up with documentation); 19-4 at 9 (written complaint from Hodges, stating that she had brought this to Andrew's attention)]. Similarly, Concord had received complaints about Bass but did not issue any written warnings until receiving written complaints that rose to an actionable level. [Docs. 24-1 ¶¶ 11–15; 24-2 ¶¶ 7–11.] Plaintiff has failed to produce evidence that she was not terminated pursuant to Concord's policy for receiving two written warnings within a twelve-month period—she has not established either that this proffered reason for termination is false or that age or disability was the real reason for her termination. Accordingly, summary judgment should be granted.[10]

---

[10]Because the Court has determined that Plaintiff has failed to establish that the proffered reason for terminating Plaintiff is a pretext for unlawful discrimination, the Court declines to address Defendants' remaining arguments that Choice was not Plaintiff's employer [Doc. 19-1 at 31–32]; that Plaintiff failed to exhaust her administrative remedies as to Choice [Doc. 24 at 1–2]; and that Plaintiff's claim for lost wages should be cut off at the date she voluntarily retired [Doc. 19-1 at 32–33].

**CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 30, 2015
Greenville, South Carolina