IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Angela Palomino, | ) | C.A. No. 6:14-1363-HMH-JDA |
| | ) | |
| Plaintiff, | ) | **OPINION & ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Concord Hospitality Enterprises Company | ) | |
| and Choice Hotels International, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court with the Report and Recommendation of United States

Magistrate Judge Jacquelyn D. Austin, made in accordance with 28 U.S.C. § 636(b) and Local

Civil Rule 73.02 of the District of South Carolina.[1]  Angela Palomino ("Palomino") alleges that

the Defendants, Concord Hospitality Enterprises Company ("Concord") and Choice Hotels

International, Inc. ("Choice"), violated her rights under the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101, et seq., and the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621, et seq.  On November 14, 2014, the Defendants filed a motion for

summary judgment.  (Def. Mot. Summ. J., ECF No. 19.)  In her July 30, 2015 Report and

Recommendation, Magistrate Judge Austin recommends granting the Defendants' motion for

summary judgment.  (Report & Recommendation 17, ECF No. 41.)  Palomino filed objections

---

[1] The magistrate judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1)(2006).

to the Report and Recommendation on August 17, 2015.  (Objections, ECF No. 42.)  The

Defendants replied on August 20, 2015.  (Reply to Objections, ECF No. 45.)  After review and

for the reasons stated below, the court adopts the Report and Recommendation and grants the

Defendants' motion for summary judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

Palomino began her employment with Concord in November 2003, when Concord

became the management company of the MainStay Suites hotel located at 2671 Dry Pocket

Road in Greer, South Carolina (the "Hotel").[2]  (Def. Mem. Supp. Mot. Summ. J. Ex. 5 (Pl. Dep.

20-24), ECF No. 19-5; Ex. 3 (Kreindler Aff. ¶ 8), ECF No. 19-3.)  Palomino had previously

worked at the Hotel under its prior management company and continued in her role as General

Manager after Concord became the management company.  (Id. Ex. 5 (Pl. Dep. 20-24), ECF No.

19-5.)  As the general manager of the Hotel, Palomino supervised all Hotel staff, which

consisted of eleven to fourteen employees, including a sales manager, a front desk supervisor,

front desk clerks, housekeepers, a maintenance person, a breakfast attendant, and a van driver.

(Id. Ex. 5 (Pl. Dep. 34-36), ECF No. 19-5.)  In 2011 and 2012, Palomino reported to Michael

Roberts ("Roberts"), a regional manager for Concord; Roberts reported to Ken Polo ("Polo"), a

senior vice president of operations for Concord.  (Id. Ex. 4 (Roberts Aff. ¶¶ 3, 6), ECF No. 19-

4.)  In summer 2011, Palomino informed Roberts and others at Concord that she had been

---

[2] Dry Pocket Road Hotel Development, LLC ("Dry Pocket") is a wholly owned
subsidiary and franchisee of Choice, which is the registered owner of various hotel brands
including MainStay Suites.  (Def. Mem. Supp. Mot. Summ. J. Ex. 3 (Kreindler Aff. ¶ 8), ECF
No. 19-3.)  Choice serves as the franchisor of the Hotel, and is a separate legal entity from
Concord.  (Id. Ex. 3 (Kreindler Aff. ¶ 8), ECF No. 19-3.)  At all relevant times, Choice
contracted Concord to provide management and operation services for the Hotel.  (Id. Ex. 3
(Kreindler Aff. ¶ 9), ECF No. 19-3.)

diagnosed with multiple sclerosis ("MS").[3]  (Pl. Mem. Opp'n Summ. J. Ex. 9 (Palomino Dep. 99-100), ECF No. 22-9.)

Throughout Palomino's employment, there had been oral complaints made by guests, managers, and staff about Palomino.  (Def. Reply Mem. Supp. Mot. Summ. J. Ex. 1 (Hedlund Supp. Aff.) ¶ 17, ECF No. 24-1; Ex. 2 (Roberts Supp. Aff.) ¶ 14, ECF No. 24-2.)  Roberts orally counseled Palomino about her tone and behavior in those instances.  (Id. Ex. 2 (Roberts Supp. Aff.) ¶ 14, ECF No. 24-2.)  The first complaint resulting in a written warning occurred on October 27, 2011, when the Hotel's front desk supervisor, Reggie Williams ("Williams"), emailed a complaint to Concord about what Williams perceived as an "extremely hostile" work setting.  (Def. Mem. Supp. Mot. Summ. J. Ex. 4 (Roberts Aff. ¶ 7), ECF No. 19-4.)  He reported regular "degradation" and "belittling," as well as "backbiting," "name calling," "devaluing . . . of work skills," and "lack of professional respect."  (Id. Ex. 4 (Roberts Aff. ¶ 7), ECF No. 19-4.)  Upon request, Williams presented proof by submitting examples of hostile and derogatory memoranda authored by Palomino and another similar complaint written by Hotel employee Charlene Scott ("Scott").  (Id. Ex. 7 (Hedlund Aff. ¶¶ 9-10), ECF No. 19-7.)  Roberts reviewed the documentation and spoke with Williams and Scott about their complaints.  (Id. Ex. 4 (Roberts Aff. ¶ 9), ECF No. 19-4.)

As a result, Roberts issued a written disciplinary warning on November 9, 2011, which provided that Palomino would receive continued written warnings on the next offense related to

---

[3] The parties dispute whether Palomino was actually diagnosed with MS.  The Defendants argue that Palomino has not been conclusively diagnosed with MS, as her doctors referred to her condition as "suggestive" of MS or "likely" MS.  (Def. Mem. Supp. Mot. Summ. J. 22, ECF No. 19-1.)  Palomino argues that she was diagnosed with actual MS.  (Pl. Mem. Opp'n Summ. J. 3, ECF No. 22.)

3

her hostile tone and behavior and that "[f]urther documentation could result in termination," pursuant to company policy.[4] (Id. Ex. 4 (Roberts Aff. ¶ 10), ECF No. 19-4.) Roberts and Palomino discussed the warning in person. Roberts counseled Palomino on appropriate behavior, and Palomino admitted she sometimes had trouble controlling her temper. (Def. Mem. Supp. Mot. Summ. J. Ex. 4 (Roberts Aff. ¶ 10), ECF No. 19-4.) Palomino signed the warning and thereafter submitted her written response in which she attempted to justify her actions but also acknowledged that her tone in the memoranda had been "harsh." (Id. Ex. 4 (Roberts Aff. ¶ 11), ECF No. 19-4.) In March 2012, Roberts was informed that Palomino had used an inappropriate and unprofessional tone during a conference call. (Id. Ex. 4 (Roberts Aff. ¶ 12), ECF No. 19-4.) Roberts subsequently issued an oral warning to Palomino regarding her tone and the need to remain professional in her interactions. (Id. Ex. 4 (Roberts Aff. ¶ 12), ECF No. 19-4.)

Prior to April 2012, Palomino missed only one day of work for conditions related to MS, due to being unable to "get out of bed" after receiving a shot of pain medication for a migraine. (Pl. Mem. Opp'n Summ. J. Ex. 9 (Palomino Dep. 158), ECF No. 22-9.) However, in April 2012 when she was scheduled to attend an out-of-town general manager's meeting, Palomino informed Roberts and human resources vice president Debra Punke ("Punke") that she would be unable to attend due to migraines caused by her MS. (Id. Ex. 9 (Palomino Dep. 116-17), ECF No. 22-9.) In an email to Palomino dated April 12, 2012, Punke stated: "I am so very sorry to hear this. I am also very concerned about you continuing to work in this state – let's schedule

---

[4] Concord had a policy and practice of terminating managers if they received two written warnings within a twelve-month period from the date of the first written warning. (Pl. Mem. Opp'n Mot. Summ. J. Ex. 14 (Handbook Policies), ECF No. 22-14.)

time to discuss as a group." (Id. Ex. 13 (Emails), ECF No. 22-13.)  Some time later, Palomino, Punke, Roberts and another Concord human resources representative participated in a conference call concerning Palomino's ability to continue working.  (Id. Ex. 13 (Emails), ECF No. 22-13.)

In May 2012, Roberts received oral and written complaints from Hotel employees Anna Hodges ("Hodges"), the sales manager, and Amanda Eggleston ("Eggleston"), a front desk and payroll employee.  (Def. Mem. Supp. Mot. Summ. J.  Ex. 4 (Roberts Aff. ¶ 13), ECF No. 19-4.) The complaints cited Palomino's creation of a "hostile work environment," her continued mistreatment of employees, her impeding their ability to work, as well as Palomino being the cause of some employees quitting and others looking elsewhere for employment.  (Id.  Ex. 4 (Roberts Aff. ¶¶ 13-14), ECF No. 19-4.)  On May 30, 2012, Roberts issued Palomino her second written warning within a twelve-month period and a termination notice.  (Id. Ex. 4 (Roberts Aff. ¶ 17), ECF No. 19-4.)  Palomino and Roberts met in person to discuss the warning and termination, but Palomino did not sign the second warning, and did not submit a response or appeal the termination with Concord.  (Id. Ex. 5 (Pl. Dep. 67), ECF No. 19-5.)  Palomino was sixty-five years old at the time of her termination.  (Id. Ex. 5 (Pl. Dep. 9), ECF No. 19-5.)

On July 20, 2012, Palomino filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), in which she alleged her termination was due to discrimination on the basis of her age and disability.  (Def. Mem. Supp. Mot. Summ. J. Ex. 5 (Pl. Dep. 94-96), ECF No. 19-5.)  The EEOC investigated the allegations and, on November 19, 2012, it dismissed her case finding no cause to believe that discrimination had occurred.  (Id. Ex. 5 (Pl. Dep. 102), ECF No. 19-5.)  Palomino contacted her United States Senator and

5

requested assistance in reopening her case, and thereafter, the EEOC reopened her file and issued a Notice of Intent to Reconsider. (Id. Ex. 5 (Pl. Dep. 102-03), ECF No. 19-5.) On January 28, 2014, the EEOC issued a second dismissal of her claim. (Id. Ex. 5 (Pl. Dep. 108-09), ECF No. 19-5.) Thereafter, on April 14, 2014, Palomino filed a complaint against the Defendants in this court. (Compl., ECF No. 1.)

## II. REPORT AND RECOMMENDATION

The magistrate judge's Report and Recommendation assumed without deciding that Palomino can establish a prima facie case. (Report & Recommendation 11, ECF No. 41.) The magistrate judge found that the Defendants articulated a legitimate, nondiscriminatory reason for terminating Palomino and that Palomino failed to establish a genuine issue of material fact as to whether the Defendants' articulated reason was pretext for unlawful discrimination. (Id. at 11-12, ECF No. 41.) Accordingly, the magistrate judge recommended that the Defendants' motion for summary judgment be granted. (Id. at 16, ECF No. 41.)

## III. PLAINTIFF'S OBJECTIONS

Palomino filed objections to the Report and Recommendation. Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, the court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). Palomino objects to the magistrate judge's finding that she has failed to show that Defendants' articulated reason for

6

terminating her was pretext for discrimination.  (Objections 7-12, ECF No. 42.)  For the reasons set forth below, this objection is without merit.

### IV. DISCUSSION OF THE LAW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in her favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."  Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996).  "[T]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

Under the McDonnell Douglas framework, an employee must first prove a prima facie case of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate,

7

nondiscriminatory reason for the adverse employment action.  Id.  If the employer articulates a

legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the

articulated reason was actually a pretext for discrimination.  Id. at 804.  To prove an employer's

articulated reason is a pretext for discrimination, a plaintiff "must prove '*both* that the reason

was false, *and* that discrimination was the real reason' for the challenged conduct."  Jiminez v.

Mary Wash. Coll., 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original) (quoting St. Mary's

Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

       Palomino objects to this standard, arguing that the two-prong test of proving falsity and

that discrimination is the real reason articulated in St. Mary's Honor Center v. Hicks, 509 U.S.

502 (1993), has been widely misunderstood.  (Objections 8, ECF No. 42.)  Palomino cites to the

Supreme Court decision Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), in

support of her position.  In Reeves, the Supreme Court clarified that:

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity
> of the explanation that the employer is dissembling to cover up a discriminatory
> purpose.  Such an inference is consistent with the general principle of evidence
> law that the factfinder is entitled to consider a party's dishonesty about a material
> fact as "affirmative evidence of guilt."  Moreover, once the employer's
> justification has been eliminated, discrimination may well be the most likely
> alternative explanation, especially since the employer is in the best position to put
> forth the actual reason for its decision.

Id. at 147 (internal citations omitted).  It follows, Palomino argues, that a plaintiff only needs to

prove the first Hicks prong of falsity, and that the second prong of discrimination can be inferred

as a result.  (Objections 8, ECF No. 42.)  Still, as the Report and Recommendation adequately

notes, "[c]ourts must . . . resist the temptation to become so entwined in the intricacies of the

[McDonnell Douglas] proof scheme that they forget that the scheme exists solely to facilitate

determination of 'the ultimate question of discrimination *vel non*.'"  Proud v. Stone, 945 F.2d

796, 798 (4th Cir. 1991) (internal citation omitted).  Further, the Reeves Court itself supports

this contention:  "The ultimate question in every employment discrimination case involving a

claim of disparate treatment is whether the plaintiff was the victim of intentional

discrimination."  Reeves, 530 U.S. at 153.

      Assuming without deciding that Palomino can establish a prima facie case of disability

or age discrimination,[5] the Defendants have satisfied their burden of articulating a legitimate,

nondiscriminatory reason for terminating Palomino.  Prior to her first formal warning, Palomino

had been counseled on her tone and behavior.  (Def. Reply Mem. Supp. Mot. Summ. J. Ex. 2

(Roberts Supp. Aff. ¶ 14), ECF No. 24-2.)  Then, between November 2011 and May 2012, she

received two written warnings and an oral warning, which were based on complaints of hostile

work environment and inappropriate tone and behavior received from at least five different

employees.  (Def. Mem. Supp. Mot. Summ. J. Ex. 4 (Roberts Aff.) generally, ECF No. 19-4.)

Palomino was subsequently terminated pursuant to company policy providing that managers

may be terminated after receiving only two written warnings within a twelve-month period from

the date of the first written warning.  (Pl. Mem. Opp'n Mot. Summ. J. Ex. 14 (Handbook

Policies), ECF No. 22-14.)  Thus, the burden shifts to Palomino to establish a genuine issue of

material fact as to whether the articulated reason for her termination is pretext for unlawful

discrimination.  On this issue, Palomino's objections merely restate her claim and more

importantly, her claims fail to satisfy her burden of proving falsity.

_____

    [5] The Report and Recommendation also assumes without deciding that Palomino can
establish a prima facie case.  (Report & Recommendation 11, ECF No. 41.)

In her objections to the Report and Recommendation, Palomino alleges that there are genuine issues of material fact on the issue of falsity. (Objections 7, ECF No. 42.) The court disagrees. First, to the extent that Palomino objects to Concord's written warnings as inaccurate, this objection is immaterial. "It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) (internal quotations omitted). If "instead of producing evidence that shows [the supervisor's] assessment of her performance was dishonest or not the real reason for her termination – as the law requires – [the plaintiff] disputes the merits of [the] evaluations," then the plaintiff's objections are immaterial. Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000). Here, Palomino is only objecting to the merits of the evaluations, and has raised no genuine issue of material fact on whether Concord's warnings were dishonest or not the real reason for her termination. Therefore, this argument fails to satisfy her burden.

Similarly, Palomino also argues that Concord was unreasonable in not interviewing other employees or taking into consideration her record and the record of the complaining employees. However, "[t]he alleged opinions of . . . co-workers as to the quality of her work are . . . close to irrelevant" in a wrongful discharge action. Id. (internal quotations omitted). In addition, "it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997)). In this case, there is no evidence that the policy or practice of not interviewing other employees prior to issuing a warning evidences an intent to discriminate. Further, Concord's policies do not indicate any attempt to discriminate on the basis of age or

10

disability.  Lastly, to ask the court to inquire into what Concord did and did not consider in making its decision is asking the court to inquire into the wisdom of Concord's decision, which is not the province of the court.  Thus, this argument fails to satisfy Palomino's burden.

Third, Palomino objects to Concord not considering her side of the story as a deviation from Concord's normal business practices.  A deviation from normal business practices can illustrate pretext.  Vaughan v. Metrahealth Companies, Inc., 145 F.3d 197, 201 (4th Cir. 1998).  However, Palomino has not provided any evidence that Concord was required to interview her prior to issuing her a warning or that it failed to follow company policy and its customary practices.  Moreover, neither party disputes that Concord had a policy and practice of terminating managers if they received two written warnings within a twelve-month period from the date of the first written warning.  (Pl. Mem. Opp'n Mot. Summ. J. Ex. 14 (Handbook Policies), ECF No. 22-14.)  Therefore, Palomino has failed to raise a genuine issue of material fact on whether Concord deviated from its normal practices, and this argument fails to satisfy her burden.

Fourth, Palomino argues that Concord exhibited a sudden change in attitude toward her, which has been held to establish pretext.  See, e.g., Ryan v. Shawnee Mission Unified Sch. Dist. No. 512, 437 F. Supp. 2d 1233, 1259 (D. Kan. 2006) (holding four years of "solid and trouble-free" employment was sufficient to send the issue of pretext to the jury when the proffered justification for termination was poor working relationships).  In this case, Palomino has not established that a sudden change in attitude actually occurred.  The record reflects that throughout Palomino's employment, there had been oral complaints made by guests, managers, and staff about her that warranted Roberts' counseling, and therefore her employment cannot be

11

described as trouble-free.  (Def. Reply Mem. Supp. Mot. Summ. J. Ex. 1 (Hedlund Supp. Aff. ¶ 17), ECF No. 24-1; Ex. 2 (Roberts Supp. Aff. ¶ 14), ECF No. 24-2).  Further, the fact that a formal, written warning was first issued in November 2011 signifies that the complaints had ultimately risen to a serious and actionable level, not a sudden change in attitude.  Similarly, that Concord followed a gradual progression of disciplinary action based on continued complaints against Palomino over the course of several months illustrates not a sudden change in attitude, but an adherence to company policy.  Thus, this argument does not satisfy Palomino's burden.

Lastly, to the extent the discussion of an alleged comparable employee whom Palomino argues was treated differently from her operates as a pretext argument, Palomino again is unable to raise any genuine issue of material fact.  The McDonnell Douglas framework does consider evidence of disparate treatment of comparable employees as "[e]specially relevant."  411 U.S. at 804.  However, Palomino does not dispute that Linda Bass ("Bass"), the alleged comparable employee, was terminated following two written warnings within a twelve-month period after guest and employee complaints were filed against her.  Palomino only offers that:  (1) Roberts tolerated Bass's conduct and allowed it to continue for over two years before issuing the first written warning, and (2) Roberts met with employees to investigate the complaints against Bass, which had he done with Palomino, he would have discovered other employees disagreed with the complaints against her.  (Pl. Mem. Opp'n Mot. Summ. J. 7-8, ECF No. 22.)  First, as previously discussed, Roberts and Concord had also received complaints throughout Palomino's employment that warranted Roberts' counseling.  (Def. Reply Mem. Supp. Mot. Summ. J. Ex. 1 (Hedlund Supp. Aff. ¶ 17), ECF No. 24-1; Ex. 2 (Roberts Supp. Aff. ¶ 14), ECF No. 24-2).  In both situations, Roberts only responded with a formal warning when the complaints against

12

Palomino and Bass rose to an actionable level.  Second, the first actionable complaint in Bass's case was a guest complaint, and Roberts met with employees to investigate that complaint.  (Id. Ex. 2 (Roberts Supp. Aff. ¶ 9), ECF No. 24-2.)  The first actionable complaint against Palomino was not a guest complaint, but an employee complaint, which may not have required a similar investigation.  (Def. Mem. Supp. Mot. Summ. J. Ex. 4 (Roberts Aff. ¶ 7), ECF No. 19-4.)  More importantly, as previously discussed, the alleged opinions of other employees are not relevant and the court will not engage in such an inquiry.  Ultimately, Palomino has failed to establish that Bass was treated differently than her.

### V. CONCLUSION

Based on the foregoing, Palomino has failed to satisfy her burden in establishing any pretext or falsity in Concord's termination of her employment.  Therefore, after a thorough review of the magistrate judge's Report and the record in this case, the court adopts Magistrate Judge Austin's Report and Recommendation.

Therefore, it is

**ORDERED** that the Defendants' motion for summary judgment, docket number 19, is granted.

**IT IS SO ORDERED**.


                                                    s/Henry M. Herlong, Jr.
                                                    Senior United States District Judge
Greenville, South Carolina
August 27, 2015